UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
:
LOREN RICHARDSON, on behalf of himself, :
individually, and on behalf of all others similarly- :
situated, : Case No.: 16 CV 03538 (LGS)
:
Plaintiff, :
:
v. :
:
REGEIS CARE CENTER, LLC, and CHAIM :
SIEGER, individually, and ABRAHAM SIEGER, :
individually, :
:
Defendants. :
------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**HERRICK, FEINSTEIN LLP**
Jonathan L. Adler, Esq.
Shivani Poddar, Esq.
2 Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

APPLICABLE LEGAL STANDARDS ON A MOTION TO DISMISS .......................................4

ARGUMENT ...................................................................................................................................5

I.  THE COMPLAINT DEMONSTRATES THAT RICHARDSON CANNOT STATE A PLAUSIBLE FLSA CLAIM FOR UNPAID OVERTIME ................................5

  A. Richardson's Salary of $88,500 Qualifies him for Both Exemptions .....................5

  B. Richardson is Exempt from the FLSA's Overtime Requirements Because he was Employed as a Bona Fide Professional.........................................................9

  C. Richardson is Exempt from the FLSA's Overtime Requirements Because he was Employed as a Bona Fide Executive ........................................................10

II. RICHARDSON'S COLLECTIVE ACTION CLAIMS FAIL .........................................13

III. RICHARDSON SHOULD NOT BE PERMITTED TO SEND CLASS NOTICE DURING THE PENDENCY OF THIS MOTION .........................................................14

CONCLUSION ..............................................................................................................................15

# **TABLE OF AUTHORITIES**

Page

**Federal Cases**

Ahmed v. T.J. Maxx Corp.,
    103 F. Supp. 3d 343 (E.D.N.Y. 2015) ........................................................................................13

Anani v. CVS RX Servs., Inc.,
    788 F. Supp. 2d 55 (E.D.N.Y. 2011), aff'd, 730 F.3d 146 (2d Cir. 2013) ........................6, 7, 9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ......................................................................................................................4

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ......................................................................................................................4

Davis v. Lenox Hill Hosp.,
    No. 03 Civ. 3746 (DLC), 2004 WL 1926087 (S.D.N.Y. Aug. 31, 2004) ..................................9

Ghosh v. Neurological Servs. of Queens,
    No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807 (E.D.N.Y. Feb. 3, 2015) ............................5

Goff v. Bayada Nurses, Inc.,
    424 F. Supp. 2d 816 (E.D. Pa. 2006) ........................................................................................11

Gordon v. Kaleida Health,
    299 F.R.D. 380 (W.D.N.Y. 2014) ..............................................................................................10

Hoffmann v. Sbarro, Inc.,
    982 F. Supp. 249 (S.D.N.Y. 2007) ............................................................................................14

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,
    595 F.3d 86 (2d Cir. 2010) ...........................................................................................................4

Pineda v. Jim-Mar Consultants, Inc.,
    741 F. Supp. 2d 398 (E.D.N.Y. 2010) ......................................................................................14

Rivera v. Anjost Corp.
    No. 15-2143, 2016 WL 1274182, at *1-2 (2d Cir. Apr. 1, 2016) ..........................................6, 8

Shafir v. Continuum Health Care Partners, Inc.,
    No. 12-CV-5794 (KBF), 2016 WL 205435 (S.D.N.Y. Jan. 15, 2016) ........................5, 6, 7, 8

Stein v. Guardsmark, LLC,
    No. 12 Civ. 4739 (JPO), 2013 WL 3809463 (S.D.N.Y. July 23, 2013) ..........................6, 7, 8

Wetzel v. Town of Orangetown,
   No. 06 Civ. 15190 (LAP), 2013 WL 1120026 (S.D.N.Y. Mar. 18, 2013), aff'd, 556 F.
   App'x 46 (2d Cir. 2014) .................................................................................................. 6, 7

## **Statutes & Regulations**

29 U.S.C. § 207(a) ............................................................................................................... 4

29 U.S.C. § 216(b) ............................................................................................................. 13

29 C.F.R. § 541.100 ....................................................................................................... 5, 11

29 C.F.R. § 541.102 ........................................................................................................... 12

29 C.F.R. § 541.103 ........................................................................................................... 13

29 C.F.R. § 541.300 ......................................................................................................... 5, 9

29 C.F.R. § 541.301(e)(2) .................................................................................................... 9

29 C.F.R. § 541.700(b) ...................................................................................................... 12

29 C.F.R. § 604(a) ............................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1, 4, 14

Defendants Regeis Care Center, LLC, Chaim Sieger and Abraham Sieger (collectively "**Regeis**" or "**Defendants**") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice the Collective Action Complaint filed on May 12, 2016 by Loren Richardson ("**Richardson**" or "**Plaintiff**"), on behalf of himself, individually, and on behalf of all others similarly-situated (the "**Complaint**").[1]

## PRELIMINARY STATEMENT

The Complaint plainly establishes that Richardson has no basis for a claim under the Fair Labor Standards Act ("**FLSA**") for overtime pay. The FLSA expressly exempts from its overtime requirements employees like Richardson, who are compensated on a salary basis at a rate of at least $455 per week and employed in a "professional" or "executive" capacity. Richardson himself has acknowledged, time and again, that he was paid an annual salary of $88,500, which amounts to $1701.92 per week, well above FLSA's $455 per week threshold requirement, and indeed the Complaint indicates that he was paid $48.63 per hour, which amounts to an annual salary of $88,500. Richardson also concedes in the Complaint that he was employed in an exempt professional capacity as a Registered Nurse. On this basis alone, the Complaint must be dismissed.

Nonetheless, in addition to the professional exemption, Richardson also qualifies for the executive exemption by virtue of his employment as a Registered Nurse Supervisor, another fact Richardson concedes in the Complaint. [Adler Decl. Ex. A ¶ 16 (noting that Richardson's duties consisted of "supervising nurses").] Richardson's own allegations, therefore, demonstrate that

---

[1] References to exhibits attached to the Declaration of Jonathan L. Adler, Esq. ("**Adler Decl.**"), dated July 15, 2016, and the Declaration of Gitte Miller ("**Gitte Decl.**"), dated July 15, 2016, shall be as follows, respectively: [Adler Decl., ¶ __, Ex. __.]; [Gitte Decl., ¶ __, Ex. __.] A copy of the Complaint is annexed to the Adler Declaration as Exhibit A.

he has absolutely no basis for a claim under the FLSA for alleged unpaid overtime compensation, based on two well-defined and clearly applicable exemptions.

## STATEMENT OF FACTS

Richardson was employed as a Registered Nurse Supervisor, from September 21, 2012 through November 6, 2015, for an annual salary of $88,500, or approximately $1701.92 per week, by Regeis Care Center LLC, a rehabilitation care center located at 3200 Baychester Avenue, Bronx, New York 10475, co-owned by Chaim Sieger and Abraham Sieger. [Adler Decl. Ex. A ¶¶ 14-16, 18;[2] Gitte Decl., ¶¶ 3-5.]

In his capacity as Registered Nurse Supervisor, Richardson was primarily responsible for managing the operation of an entire floor, and supervising the 24-hour operation of one of the six individual nurse units. [Adler Decl. Ex. A ¶ 16; Gitte Decl., ¶ 6.] Richardson's shifts were almost exclusively devoted to managerial roles and responsibilities, which accounted for nearly one hundred percent of his hours worked. [Gitte Decl., ¶ 6.] Richardson also, among other things, participated in employee performance evaluations and made recommendations to the Director of Nursing Services concerning employee dismissals, transfers, and related actions. [Id.] During the course of Richardson's employment, Richardson, like all Regeis employees, exempt or non-exempt, was required to record the total hours worked each day by using a time clock and, more recently, a biometric handswipe system. [Gitte Decl., ¶ 8.]

From September 2012 through December 2013, Richardson generally worked 35 hours a week, consisting of five (5) shifts of seven (7) hours each. [Adler Decl. Ex. A ¶ 17; Gitte Decl., ¶ 7.] On or about December 2013, Richardson requested two additional evening shifts of seven (7) hours each in order to supplement his income. [Gitte Decl., ¶ 7.] He indicated that the

---

[2] In the Complaint, Richardson erroneously contends that he was employed by Regeis from November 3, 2012 through November 15, 2015.

2

additional shifts would prevent him from seeking employment elsewhere. [Id.] Regeis granted his request, and thereafter, for certain weeks, Richardson worked extra shifts as a Registered Nurse Supervisor, for which he received additional compensation. [Adler Decl. Ex. A ¶ 17; Gitte Decl., ¶ 7.]

Throughout Richardson's employment, including the time period relevant to this dispute, he received a minimum payment of $1701.92 per week (or $48.63 per hour for 35 hours), in accordance with his $88,500 annual salary, without regard to the number of hours worked. [Adler Decl. Ex. A ¶ 18; Gitte Decl., ¶ 9.] For the weeks in which he worked additional shifts, he was paid the same hourly rate of $48.62, which equates to his $88,500 salary on an hourly basis. [Adler Decl. Ex. A ¶ 18; Gitte Decl., ¶ 10.]

Significantly, during the years Richardson was employed by Regeis, he neither complained about receiving less compensation than he was entitled, nor claimed that he was entitled to overtime pay. [Gitte Decl., ¶ 14.] In fact, the exact opposite is true. Throughout his employment, Richardson understood and acknowledged that he was employed on a salary basis and exempt from overtime pay. [Gitte Decl., ¶ 11.] For example, before commencing employment with Regeis, Richardson executed a Notice and Acknowledgement of Wage Rate and Designated Payday Form, in which he acknowledged that his annual salary was $88,500, and he was exempt from overtime pay. [Gitte Decl., ¶ 11, Ex. 1.] Likewise, for each subsequent year of employment, Richardson executed a similar Acknowledgement Form, recognizing that his weekly salary was $1701.92. [Gitte Decl., ¶ 12, Exs. 8, 9, 10, and 11.]

Nonetheless, on May 12, 2016, Richardson filed the Complaint, on behalf of himself, individually, and all others similarly situated, alleging that he is entitled to overtime pay,

3

pursuant to the overtime provisions of the FLSA, 29 U.S.C. § 207(a), at a rate of $72.92 for any hours worked in excess of forty per week. [Adler Decl. Ex. A.]

## APPLICABLE LEGAL STANDARDS ON A MOTION TO DISMISS

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a party must allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (internal citations omitted).  This requires a party to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations . . . are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (citing Twombly, 550 U.S. at 545).

A party cannot merely state conclusions that are consistent with a viable claim for relief, but instead must provide sufficient facts to cross the boundary "between possibility and plausibility." Twombly, 550 U.S. at 557. To the extent the Complaint merely articulates "labels and conclusions, and a formulaic recitation of the elements of a cause of action," it must be dismissed. Id. at 555. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, [and] pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79. As demonstrated below, the allegations in the Complaint clearly demonstrate that Richardson has no plausible claim under the FLSA because he indisputably falls within two well-defined exemptions for overtime pay, and on this basis, the Complaint must be dismissed.

4

## ARGUMENT

I. **THE COMPLAINT DEMONSTRATES THAT RICHARDSON CANNOT STATE A PLAUSIBLE FLSA CLAIM FOR UNPAID OVERTIME**

The FLSA expressly exempts from its overtime requirements those employees, who are compensated on a salary basis at a rate of at least $455 per week and employed in a "professional" or "executive" capacity. See Shafir v. Continuum Health Care Partners, Inc., No. 12-CV-5794 (KBF), 2016 WL 205435, at *4 (S.D.N.Y. Jan. 15, 2016) (rejecting claim for overtime where employee was paid on a salary basis); Ghosh v. Neurological Servs. of Queens, No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (concluding that plaintiff's FLSA claim was patently meritless where his own submissions indicated that he was a licensed physical therapist with a master's degree). In addition to satisfying the salary basis test, an employee must also satisfy a separate "duties test" for each of the exemptions to apply. 29 C.F.R. § 541.300-01; 29 C.F.R. § 541.100.

Here, the allegations in the Complaint establish that Richardson plainly falls within the purview of both exemptions, defeating his claim for overtime, because: (1) he admits he was paid $48.63 per hour, which amounts to a salary of $88,500, well above the $455 per week threshold; (2) he admits that he was employed as a Registered Nurse, which qualifies him for the learned professional exemption; and (3) he admits that he undertook a supervisory role as the Registered Nurse Supervisor, which exempts him from overtime pursuant to the executive exemption.

### A. Richardson's Salary of $88,500 Qualifies him for Both Exemptions

Under the FLSA, an employee is compensated on a salary basis "if the employee regularly receives . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or

quantity of work performed." See Shafir, 2016 WL 205435, at *4 (citing 29 C.F.R. § 541.602); Wetzel v. Town of Orangetown, No. 06 Civ. 15190 (LAP), 2013 WL 1120026, at *4 (S.D.N.Y. Mar. 18, 2013), aff'd, 556 F. App'x 46 (2d Cir. 2014) (ruling that salary basis test satisfied where employee was paid a predetermined amount on a bi-weekly basis). The "predetermined" amount is generally found where the employee's compensation is both fixed and determined prior to the payment period. Anani v. CVS RX Servs., Inc., 788 F. Supp. 2d 55, 62 (E.D.N.Y. 2011), aff'd, 730 F.3d 146 (2d Cir. 2013). Further, if the employee's compensation is not reduced as a result of the number of hours worked, the salary basis test is satisfied. Id.

The fact that an employee receives additional compensation, over and above the predetermined amount, does not defeat the exemption. See Stein v. Guardsmark, LLC, No. 12 Civ. 4739 (JPO), 2013 WL 3809463, at *5 (S.D.N.Y. July 23, 2013) (citing to 29 C.F.R. § 541.604). The regulations expressly contemplate that employers may provide exempt employees with additional compensation without violating the salary basis requirement, "if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis." Id. (noting that "courts have consistently held that an employee's receipt of additional amounts, *including overtime,* above his predetermined base compensation does not destroy the employee's otherwise valid salary status," even where the employee's hours are tracked) (emphasis in original).

The Second Circuit's reasoning in Rivera v. Anjost Corp. is particularly instructive because the court rejected outright the argument that the salary basis test is defeated where an employee receives differing payment amounts each week based upon the number of days worked. No. 15-2143, 2016 WL 1274182, at *1-2 (2d Cir. Apr. 1, 2016). Rather, the court explained that the salary test is satisfied where: (1) the employee received regular weekly

compensation for five days (or less) of work per week; (2) the standard weekly amount was never reduced; (3) the employee was paid for sick, vacation and personal days; and (4) the employee received additional compensation for weeks that he worked an additional day, in the amount of one-fifth of his usual salary. Id.

Richardson indisputably satisfies the salary basis test for both exemptions because he consistently received a minimum weekly payment of $1701.92, in accordance with his $88,500 annual salary, which far exceeds the FLSA's requirement of $455 per week. Richardson concedes in the Complaint that he was paid an hourly rate of $48.63, which amounts to a weekly salary of $1701.92 and an annual salary of $88,500.[3] [Adler Decl., Ex. A ¶ 18.] Payment reports for Richardson also clearly establish that Regeis regularly paid Richardson a minimum of $1701.92 for every single week during his employment (including the time period allegedly relevant to this dispute, May 12, 2013 through November 6, 2015), despite the number of hours Richardson worked, with the exception of one week. [Gitte Decl., ¶¶ 8-9, Ex. 7.] For the week of November 5, 2015, Richardson received $680.77 for two days of work as a result of a three-day disciplinary suspension, which in and of itself is insufficient to defeat the salary basis test. [Gitte Decl., ¶ 9.];[4] Shafir, 2016 WL 205435, at *4 ("The regulations do, however, permit deductions from an exempt employee's pay . . . for unpaid disciplinary suspensions of one or

---

[3] The fact that Regeis tracked Richardson's hours, through a time clock and biometric handswipe system, is inconsequential because it is well-established that employers may use a payroll system that tracks hours without affecting an employee's exempt status. See Anani, 788 F. Supp. 2d at 63. "A payroll accounting system which calculates an exempt employee's pay on an hourly basis does not indicate that the employee was not salaried and, thus, is not subject to the FLSA's minimum wage or overtime wage requirements." Anani, 788 F. Supp. 2d at 63. The Secretary of Labor has also opined that "employers, without affecting their employees' exempt status [including their status as a salaried employee] . . . may require exempt employees to record and track hours." Stein, 2013 WL 3809463, at *5; see also Wetzel v. Town of Orangetown, 2013 WL 1120026, at *4 (holding that where employee was paid a predetermined amount on a bi-weekly basis, such was sufficient to meet the salary basis test).

[4] Where the payment reports list payments less than $1701.92 for any given week, such payments were in addition to Richardson's weekly compensation and were attributed to sick days, holidays, vacations and/or bonuses. See November 21, 2013 (2 checks for the week); August 14, 2014 (2 checks for the week); October 16, 2014 (2 checks for the week); November 20, 2014 (2 checks for the week); December 11, 2014 (2 checks for the week); June 11, 2015 (2 checks for the week); February 5, 2015 (2 checks for the week); November 5, 2015 (2 checks for the week). [Gitte Decl., ¶ 9, n.1.]

7

more full days imposed in good faith for infractions of workplace conduct rules pursuant to a written policy applicable to all employees . . . .") (citing 29 C.F.R. § 541.602(b)(5)).

Additionally, for the weeks in which Richardson worked extra shifts, he received additional compensation, at an hourly rate of $48.62, which is equivalent to his $88,500 salary on an hourly basis. [Adler Decl., Ex. A ¶ 18 ("Defendants paid Plaintiff an hourly rate of $48.62 for all hours worked, including hours worked in excess of forty."); Gitte Decl., ¶ 10.] The labor regulations expressly indicate that employers, like Regeis, can provide employees with additional compensation, over and above the guaranteed weekly salary payment, without violating the salary requirement or the exemption. Stein, 2013 WL 3809463, at *5 (citing to 29 C.F.R. § 541.604); Rivera, 2016 WL 1274182, at *1-2. Such additional compensation can be paid in any manner the employer deems fit including in the form of straight-time hourly pay. See 29 C.F.R. § 604(a) (explaining that "[s]uch additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis . . . .)").

Notably, in a situation nearly identical to Richardson's, the Second Circuit ruled that the salary basis test is satisfied even where the employee receives differing payments each week, so long as the employee receives regular weekly compensation, payments for sick, vacation and personal days, and additional compensation for weeks in which the employee works additional days. Rivera, 2016 WL 1274182, at *1-2; see also Shafir, 2016 WL 205435, at *4 (noting that regulations permit an employer to provide additional compensation without violating the salary requirement, and the "regulations shall not be construed in an unduly technical manner so as to defeat the exemption."). It is undisputed that Richardson received consistent weekly payments of $1701.92, payments for used and unused sick days, holidays, vacations and bonuses, and

additional compensation for extra shifts. [Gitte Decl., ¶¶ 9-10, n.1.] Thus, Richardson clearly satisfies the salary basis test.

It bears noting that Richardson himself knew and acknowledged, time and again, that he was a salaried employee, exempt from overtime. [Gitte Decl., ¶ 11-12.] On August 30, 2012, prior to commencing employment, Richardson executed a Notice and Acknowledgement of Wage Rate and Designated Payday Form, in which he expressly acknowledged that: (a) he was paid an annual, predetermined and fixed salary of $88,500; and (b) he was exempt from any overtime pay. [Gitte Decl., ¶ 11, Ex. 1.] For each subsequent year of employment, Richardson executed a similar acknowledgement form, recognizing that his weekly salary was fixed at $1701.92. [Gitte Decl., ¶ 12, Exs. 8, 9, 10, and 11.]; Anani, 788 F. Supp. 2d at 62 (ruling that salary basis is generally satisfied where payment is predetermined, fixed and paid consistently). Based on the foregoing, it is undisputed that Richardson's $88,500 annual salary qualifies him for both the bona fide professional exemption and the bona fide executive exemption.

### B. Richardson is Exempt from the FLSA's Overtime Requirements Because he was Employed as a Bona Fide Professional

It is well-settled that the FLSA provides an exemption from overtime pay for employees, who are paid on a salary basis not less than $455 per week, and "whose primary duty . . . [r]equir[es] knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction . . . ." See 29 C.F.R. § 541.300 (the "learned professional" exemption). The FLSA expressly contemplates that registered nurses, such as Richardson, qualify for the learned professional exemption, noting that "[r]egistered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption." 29 C.F.R. § 541.301(e)(2); see also Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926087, at *4, n.14 (S.D.N.Y. Aug.

31, 2004) ("Registered nurses . . . generally meet the duties requirements for the learned professional exemption."); Gordon v. Kaleida Health, 299 F.R.D. 380, 388-89 (W.D.N.Y. 2014) (ruling that registered nurses are exempt from overtime exemptions under New York Labor Law and the FLSA).

As demonstrated above, Richardson clearly satisfied the first prong of the bona fide professional exemption by receiving an annual salary of $88,500, well-above the threshold requirement of $455 per week. Richardson also satisfies the second prong of the bona fide professional exemption by virtue of his employment as a Registered Nurse, a fact Richardson concedes in the Complaint. [Adler Decl. Ex. A ¶ 16 (stating that "Defendants employed Plaintiff as an RN [defined as 'Registered Nurse'] . . . .] In addition, Richardson's Certificate of Completion, dated August 2003, from The State of New York Education Department, and the Registration Certificate from The University of the State of New York, Education Department, Office of Professions, also establish that Richardson is indeed registered to practice as a Registered Nurse in New York State through November 30, 2017. [Gitte Decl., ¶ 5, Exs. 2, 3.] Because Richardson satisfies both the salary basis test and qualifies as a learned professional, facts that apparent from the face of the Complaint, Richardson's claim for overtime pay must be rejected, and the Complaint must be dismissed on this basis alone.

    **C.**     **Richardson is Exempt from the FLSA's Overtime Requirements Because he was Employed as a Bona Fide Executive**

In addition to the learned professional exemption, the FLSA also exempts from overtime pay a salaried employee, paid over $455 per week, employed in a bona fide executive capacity: "(a) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (b) [w]ho customarily and regularly directs the work of two or more other employees; and (c) [w]ho has the authority to

hire or fire other employees, or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of employees are given particular weight." 29 C.F.R. § 541.100; Goff v. Bayada Nurses, Inc., 424 F. Supp. 2d 816, 820-21 (E.D. Pa. 2006) (holding that executive exemption applied where staff supervisor of an in-home nursing care facility assumed responsibility for delivery of services by nurses, determined schedules for field staff, and provided suggestions on decisions to terminate employees).

Richardson's role as Registered Nurse Supervisor clearly qualifies him for the executive exemption as well, a fact acknowledged in the Complaint, wherein Richardson concedes that his "duties mainly consisted of providing direct patient care, creating patient care plans, communicating with patients' family doctors, **supervising nurses**, and resolving patient issues." [Adler Decl. Ex. A ¶ 16 (emphasis added).] Undeniably, Richardson satisfies the three prongs of the executive exemption. First, Richardson's performance evaluations, which list all of Richardson's roles and responsibilities, note that the "primary purpose of the RN Supervisor job position is to supervise the nursing activities of the facility during [his] tour of duty." [Gitte Decl., ¶ 6, Exs. 4, 5, 6.] Consistent with this primary purpose, Richardson undertook a plethora of management and supervisory duties including, among many others, the following:

- Participating in developing, maintaining, and updating written policies and procedures that govern the nursing service department, and ensuring that the reference material utilized by nurses, including the Nurse Services Procedure Manual, is current;

- Making daily rounds of the nursing department to ensure that all nursing service personnel are performing their work assignments;

- Ensuring that all nursing service personnel comply with the procedures set forth in Regeis' Nursing Services Procedure Manual and their respective job descriptions;

- Making written and oral reports and recommendations to the Director of Nursing Services concerning the operation of the nursing service department;

11

- Reviewing and evaluating the department's work force and making recommendations to the Director;

- Meeting with the nursing staff and support personnel, to plan the department's services, programs and activities;

- Ensuring that a sufficient number of licensed practical nurses, registered nurses and/or certified nursing assistants are available for the tour of duty to ensure quality care is maintained;

- Developing work assignments and delegating to each charge nurse the administrative authority, responsibility, and accountability necessary to perform the assigned duties;

- Reviewing complaints and grievances made or filed by department personnel;

- Participating in developing, planning, conducting, and scheduling training classes and orientation programs, and ensuring that a well-educated nursing service department is maintained;

- Developing, implementing and maintaining safety standards; and

- Assessing the department's needs with regard to medications, medical supplies, equipment, etc.

[Id.]; 29 C.F.R. § 541.102 (defining "management" to include "activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; . . . appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances . . . planning the work; determining the techniques to be used; apportioning the work among the employees, determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold . . . providing for the safety and security of the employees or the property . . . and monitoring or implementing legal compliance measures.").

Significantly, Richardson's shifts were almost exclusively devoted to his managerial roles and responsibilities and accounted for nearly one hundred percent of his hours worked. [Gitte Decl., ¶ 6.]; 29 C.F.R. § 541.700(b) ("[E]mployees who spend more than 50 percent of

12

their time performing exempt work will generally satisfy the primary duty requirement."); Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 351 (E.D.N.Y. 2015) ("[U]nder the DOL regulations "concurrent performance of exempt and nonexempt duties does not necessarily disqualify an employee from the executive exemption."). Indeed, Richardson's performance evaluations, listing all of his duties and responsibilities, establish that his role was primarily dedicated to managerial activities. [Gitte Decl., ¶ 6, Exs. 4, 5, and 6.]

Second, as a Registered Nurse Supervisor, Richardson managed an entire Regeis Care Center floor and supervised the 24 hour operation of one of six individual nurse units, including generally managing two licensed practical nurses and six certified nursing assistants during his day shifts, and four licensed practical nurses and seven to ten certified nursing assistants during his evening shifts. [Id.]; 29 C.F.R. § 541.103 ("A customarily recognized department or subdivision" is one that has a "permanent status and a continuing function."). Third, Richardson participated in employee performance evaluations for the nurses in his individual nurse unit and made recommendations concerning employee dismissals, transfers, and related actions, which were considered seriously by the Director of Nursing Services in making hiring and firing decisions. [Gitte Decl., ¶ 6, Exs. 4, 5, and 6.] Based on Richardson's employment as a Registered Nurse Supervisor, Richardson has absolutely no entitlement to overtime compensation under the FLSA, and the Complaint must be dismissed on this basis as well.

## II.     RICHARDSON'S COLLECTIVE ACTION CLAIMS FAIL

The same reasons warrant dismissal of Richardson's collective action allegations. The FLSA permits a plaintiff to bring an action "against any employer . . . on behalf of himself and other employees similarly situated." 29 U.S.C. § 216(b). While neither the FLSA nor its accompanying regulations define the term "similarly situated," courts have held that plaintiffs must, at a minimum, provide "a modest factual showing sufficient to demonstrate that they and

potential plaintiffs . . . were victims of a common policy or plan that violated the law." Pineda v. Jim-Mar Consultants, Inc., 741 F. Supp. 2d 398, 400 (E.D.N.Y. 2010) (citing Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008)).

Here, Richardson asserts claims on behalf of himself and a collective defined as "[c]urrent and former employees of Regeis who, during the applicable FLSA limitations period performed any work for Defendants as a **Registered Nurse** . . . ." (Adler Decl. Ex. A ¶ 11 (emphasis added)). Even if, arguendo, Richardson is able to establish that the collective is "similarly situated" to Richardson, this very fact exempts the entire collective from entitlement to overtime pay because, as registered nurses, such individuals qualify for the bona fide professional exemption. Moreover, if this Court rules that Richardson is in fact exempt, either under the professional exemption or the executive exemption, Richardson can no longer serve as a collective representative, defeating the collective action allegations altogether. As a result, all collective and class allegations of the Complaint must be dismissed on this basis as well.[5]

### III. RICHARDSON SHOULD NOT BE PERMITTED TO SEND CLASS NOTICE DURING THE PENDENCY OF THIS MOTION

In light of the well-settled case law supporting the grounds for Defendants' Fed. R. Civ. P. 12 (b)(6) motion, Defendants request an order from the Court precluding Plaintiffs from filing a motion for expedited notice pending the Court's decision on the instant Motion to Dismiss. See Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 253 (S.D.N.Y. 2007) ("The Court will address defendant's [dispositive] motion first. Obviously, if the Court deems this action ripe for dismissal, it would be futile to send class notice to other potential plaintiffs, and plaintiffs' motion would be moot.").

---

[5] Although for the reasons set forth herein, Richardson's collective action claims fail as a matter of law and should be dismissed, if Richardson's collective action claims should survive, Richardson should be required to file a motion for conditional certification prior to sending any notice to the putative class members.

## CONCLUSION

For all of the foregoing reasons, Regeis respectfully requests that this Court issue an order dismissing Richardson's Complaint in its entirety, with prejudice, together with such further relief as the Court may deem just and proper.

Dated: July 15, 2016
New York, New York

                                          **HERRICK, FEINSTEIN LLP**

                                          By: /s/ Jonathan L. Adler
                                          Jonathan L. Adler, Esq.
                                          Shivani Poddar, Esq.
                                          2 Park Avenue
                                          New York, New York 10016
                                          (212) 592-1400

                                          *Attorneys for Defendants*